Our third case of the morning is in re Marriage of Rhodes 4-10-0446 for the appellate, Mr. Pretnar, and for the appellee, Mr. Berry. You may proceed. Thank you. Good morning. May it please the court and counsel, I am Alan Pretnar. I'm from Taylor Springs, Illinois in Montgomery County. I'm here on behalf of Harry Rhodes, and Harry is asking the court to find that the trial court in this matter's decision regarding the division of the property on Regency Road was against the manifest weight of the evidence at least to 50% of the value of real estate. He believes that he proved, by clear and convincing evidence, as to that 50% based on Kendra's testimony, that he transferred that property for estate planning purposes. When they bought that property, what did they say to each other? When they bought the property, Harry said he was going to put the property in Kendra's name to ensure that his children received the property if something happened to him. At the time, Harry had four children. Three were adults. One was 12 years old. Harry had been married two previous times. Kendra had been married three previous times. Did they say anything about the possibility of getting a divorce? No. Nothing was said, and most people when they're getting married don't talk about divorces as court does. Certainly if they've gone through it 30 times like you say they have. You might have thought they would have, but be that as it may, they did not have anything in writing with respect to the real estate. That's correct. Why not? Two is important to him. They were in love. That's all I can say. I don't know. That would be speculation. Being in love means I want to give you this if I die. Well, at the time people get married, they are presumably in love with each other. But that doesn't mean they're completely enamored to the point, especially having went through two. Did they ever have a prenuptial agreement then? No, I agree. The perfect situation would have been to have a prenup. There's no question about that, Judge. But they did have an agreement. They had an agreement. Kendra did. She gets it if he dies. No. The agreement was, and Kendra backed this up, that from her standpoint the agreement was that if he died his children would get 50% of the property and she would get the other 50%. Harry said that was not the agreement. The agreement was she would ensure that the children would get 100% of the property. And this is very similar to the Losicki case that I cited in my brief. And there's also another 4th District case, Henry Marriage of Benz, which is 165 Illap 3rd 273, a 1988 case. Is that in your brief? It's not in my brief. Did you ever ask to cite to that case? Excuse me? Did you ask here in this court to cite to that case? Well, I would request the court allow me to refer to that case. This is a little bit late for that. Have you advised opposing counsel that you were going to cite? No. No, I have not. In any event, if the court does not want me to discuss that case, that's fine. But the Wozicki case is very similar in that the reason he transferred the property into the name of his wife was so that in the event something happened to him, she would not have the difficulty that he had whenever his wife did. Let me ask you a question. He thinks that there's an oral agreement regarding his death. She thinks there's an oral agreement regarding his death. But neither of those agreements are the same. And there isn't a death, there's a dissolution. Correct. How can that be clear and convincing of anything other than the presumption that arises from joint tenancy? The basis of our position is that the reason for the transfer into joint tenancy, which made the property a gift because the house transfer took place prior to the marriage, the 18-acre transfer took place after the marriage. So you have two presumptions which are basically the same. One's a gift to Kendra, one's a gift to the marital estate. But the reason for the transfer was for estate planning purposes on Harry's part. It was for estate planning purposes. Just like the argument in the Woe, Sickie case. Exactly the same. The court needs to keep in mind, Kendra's fourth marriage, Harry's third. Harry had four children, one who was 12. Kendra had no children. These parties had done this before. All the money that came to purchase the property came from Harry's non-marital mother's trust. He and his brother each got an equal amount from the trust. If one would take money out, the other had to take a similar amount. There's no dispute regarding any of those facts. Did Kendra testify? Kendra testified. Did Harry testify? Harry testified. Those were the only witnesses. If the trial court believed Kendra, what's the matter with its determination? If the trial court believed Kendra, the trial court should have then awarded Harry 50% of the value of the Regency Road property, or $125,000, as his free and clear, and then divided the other $125,000 in half. That's what she testified to? She testified that their agreement was 50% of the property was to go to his children if he died and 50% was to go to her. That was the reason for the transfer. What did his testimony say about what happens under these circumstances? Both parties testified there was no discussion regarding divorce. None. The basis is the reasoning in the Wozicki case is that the reason he put the property in the joint tenancy with his wife was for estate planning purposes. It's clear from other cases here in the Fourth District that this has been a consideration by the court, by other courts. We don't know what was on the court's mind because the court made no findings. So what we're asking the court is to make a decision regarding 50% of the property and remand the cause back to the trial court to make a decision on the credibility of the witnesses regarding that point. Did the court believe that the entire amount was transferred? Did you ask the trial court to do that at the trial court level? I asked the trial court to do it in a post-trial motion that resulted in the order of May 27th, yes. What do you mean in a post-trial motion? I asked the court specifically to change its order. And I brought up the fact that argument that the court made no findings as to the reasons why it did what it did. And we had an argument, waited approximately 30 days, and it came back down with another docket order that said, made some certain changes but did not change any of its order concerning the real estate on Regency Road. My client took his non-marital money, $147,000 of non-marital money, and purchased this property free and clear and put it in both their names. We do have an alternative argument in our second issue that says the court did not even consider the fact that he used this non-marital money. And we will make that argument alternatively. The court should have awarded him the $147,000, at least, of the property which was valued at $250,000. It didn't make any findings regarding either of the issues, didn't make any findings regarding the credibility of the witnesses, made no findings at all. Well, you know, the court's not required to do any of that, is it? Well, you're absolutely right. He wins, you lose, next case. He could do that. But it makes it difficult if we get to this process regarding findings for this court, especially when you have a situation like this. And it would almost require, as far as my first issue goes, it would require the court to remand the case to say, hey, you're going to have to make a decision regarding the credibility of these witnesses concerning the Regency Road property. Isn't the decision implicit about credibility in the decision that the court reached? No. Because the evidence is uncontroverted. Well, how about this, counsel? There's a presumption that it's a gift of the merit of all State, unless there's clear and convincing evidence otherwise. I find in favor of Kendra. That means you didn't present clear and convincing evidence otherwise. Next case. The evidence that was presented, though, Judge, was admitted to by Kendra that the reason Harry put the property into joint tenancy was for estate planning purposes as to at least 50% of the value of the property. She admitted that. She admitted that clearly. There's no question about it. None of the cases I've read have a situation where you decide who received the gift. None of the cases do you have a situation where that person admitted, yes, yes, we did have that discussion, but it was only to 50% of the property. The rest was supposed to go to me, 50% to his estate, 50% to me. Keep in mind, he had a 12-year-old son from a previous marriage. He didn't want his other wife to be in control of what happened to his property in the event that he died. That makes sense. But there's no way. She clearly admitted, if you read the transcripts, I mean, she clearly admitted that that discussion took place prior to the transfer, and that's why he did it. He trusted her. I mean, it's clear as to 50%. But don't forget the second issue, if you don't, if the court does not agree with our position on the first issue, which I think it's, at least in my mind, it's clear that this is what happened. The second issue is his contribution pursuant to 503D of $147,000 of non-marital money into this property that they used as their home during their marriage. He should have been given credit for that at a minimum. Now, there's no findings in the trial court's judgment, and I gave the trial court a second chance when I filed my post-trial motion to make some findings, and it didn't occur. But at least as to one of those two issues, Harry should be given credit for either the $147,000 or half of the value of the real estate, $125,000, and divide the one half. Another alternative the court could make would be, pursuant to my second argument, is take the total value of the property, $250,000, deduct the $147,000 from it, his contribution, and divide the remainder. We don't have a problem with that, and we ask the court to do that. We don't have a problem with doing that either, but that seems the equitable and fair thing to do based on the statute, based on the facts in this case. At the end of the case, and in my brief, I explained to the court, Kendra had $135,000 in non-marital funds that she kept non-marital throughout the marriage. Harry had $6,000 left in his mother's trust. Now, they each split the marital portion of his pension that he received from AT&T. In Kendra's brief, it mentions that Harry had the non-marital portion of his pension. Well, yeah, he did. He should have. I mean, that was his pension, and he has that. He should have the non-marital portion. But I wanted the court to keep that in mind from an equitable standpoint. Kendra walked out of the marriage with $135,000 in non-marital property, not considering her marital property, and Harry had $6,000 plus his non-marital property and his pension. So I think it's clear that the reason Harry placed that property in joint tenancy was for estate planning purposes, much like the case in Woseki that is cited, and that the court should find that as to at least 50% of that value of that property. The court's judgment was against the manifest way of the evidence, and the court should remand the case back to the trial court to make a decision on the credibility of the two parties as to their testimony regarding that property. Does the court believe Harry that he did it because he wanted to make sure his children received all of the value of the property, or did he do it so that his children would get half and Kendra would get half? That's what I'm asking the court to do. So I want to make sure I understand your position concerning a divorce. We talked about if Harry dies, and that's why this property was done the way it was. By the way, how would that have worked? Accepting Harry's testimony, let's assume he died instead of this divorce occurring, then what would have happened? And keep in mind, Kendra agreed. They had the conversation. He would have left it up to Kendra. He would have trusted Kendra to make sure that his children received the property. All of it? That's the basis of it. That's his testimony? That's his testimony, all of it, yes. She said, no, that wasn't their agreement? No, she said we had the discussion, but what the agreement was, I would make sure that his children received 50% of the value of the property and that I would get the other 50%. How old at the time of the marriage were they? Were the children? No, were Harry and Kendra. Harry was 61 at the time of the divorce. He was in his late 40s. At the time of the marriage? Yes, I believe so. I'm calculating now, but I believe he was in his late 40s. And they lived for 20, 30 years. Harry lived for 20, 30 years and then died. According to Harry, she was going to get none of this benefit of the house in which they were living? Keep in mind, all the money came from his mother. All the money used to purchase the property came from Harry's mother. What if it just came from him? The money that he had earned doing his business? I mean, if it came from his mother, that would make a difference. It could have, but yes, the answer is yes, he expected her to do that. Now, if they had lived another 20 years, I would imagine, hopefully, and of course it's all speculation, and he is alive, hopefully he lives another 20 years, but they would have taken some other estate planning measures regarding this property. I would think that they would have. However, that's what his expectation was, and Kendra admitted that that's what they discussed. So placing this residence of joint tenancy for estate planning purposes defeats the marital property of the divorce occurs? From, yes, pursuant to the Wosicki case, and other cases that are cited, and other cases that have been decided by the Fourth District Appellate Court and other courts, placing property into joint tenancy for estate planning purposes or to keep peace in the family is a legitimate reason for the court to find that there was no intent to make it a gift to the marital estate or to the individual, and to give that non-marital property back to the person who made the gift. Both of you cite the Smith case. Yes. Both of you want the court to follow that case. Well, the Smith case cites the Wosicki case. What happened in the end was different. But in both Wosicki and in Smith, the other side said, no, we had no agreement that this property would stay with this person. You didn't have testimony from the other side admitting that there was this agreement showing that the reason for the transfer was something other than a gift. And in this case, you do have that. Your opponent seemed to say that Smith talked about the credibility of the witnesses. Correct. That's true. That's what happened here. Well, we don't know what the court relied on. However, there's no issue regarding the fact that Kendra admitted that her and Harry had the conversation prior to the transfer that in the event something happened to Harry that the property would go to his children. From Kendra's standpoint, it was 50%. From Harry's standpoint, it was 100%. That was the only difference. There's no dispute regarding that. You don't have that factual situation in other cases. Was Mr. Berry trial counsel? No, he was not. What did Kendra's trial counsel argue? The trial counsel argued we did written arguments, and he really didn't address. His argument basically was it should be divided equally like everything else, and the court followed that. He didn't really address my argument. So the argument was it was marital property? Yes, that's correct. And he didn't address? He didn't address the state planning purposes issue that I remember. No. Anything further? We'll hear from you on the rebuttal. Thank you. Mr. Berry? If it pleases the court, I'm William Berry. As the justices noticed, I have been retained to address the appellate issues.  I think ordinarily Brent would be the trial counsel. But he's kind of run into a rough patch of some treatment during the course of time, thus my involvement in the case. I became very familiar with the case, much in the same way I suppose the appellate did. I read the transcript and reviewed the items. Your opponent has probably spent a good part of his argument talking about the Bordzicki case. And you don't even mention it in your brief. I think it's clearly distinguishable. You don't say it is in your brief? No, I don't. I address what I think are the more relevant decisions. Why don't you tell us in your brief that you don't think that case helps the court? I don't have an answer for that. Sometimes I'm caught without an answer. When we address a case, we address those issues that are relevant to the issue in this case. What is this court being asked to do? It's being asked to reverse the decision of the trial judge, saying that the trial judge's decision is beyond the manifest way of the evidence. When anybody else rationally considers this evidence, that panel, that individual, that group of individuals, will come to a conclusion totally different from what the judge said. And they can come to no other conclusion. Manifest way of the evidence isn't that someone else may come to a different conclusion. It's that the trial judge came to a conclusion without basis. Is Mr. Pritner correct regarding the facts that only two witnesses testified, your client and Perry, in that she said, oh, it wasn't 100%, it was conveyed for state planning purposes for 50% for the kids? Well, and I'm looking at the transcript for reference of the April 1st, 2010, and the cross-examination of Kendra starts on page 11 and runs through page 12 and 13. Counsel, a yes or a no would be very helpful. And in that she talks in terms of, yes, we had this conversation, and I talked in terms of dividing it 50-50, 50% would go to the children. There's not really discussion of why we're putting in the joint account, or, I'm sorry, in a joint name. But she does testify, yes, at the conclusion. Well, how would that testimony be construed other than as supportive of the essential position of Perry, namely that this was made for estate planning purposes, it wasn't a gift to the estate, a marital estate, and apparently your client really disagreed with some aspect of the way it was to be placed there for estate planning purposes? One, there's a, and I'm sorry, I didn't mean to interrupt you. There is a conversation, and the reason I pointed to those pages is you'll see the testimony is, was there this conversation? Yes. Was there an agreement or decision by your point that when you could, you would divide the property and split the proceeds, you keeping one half and Harry's children get one half? Yes. Now, I want you to follow the conclusion of the trial judge. In essence, that's what has happened. I'll explain that. But that is, what wasn't in any of the testimony is that it was, that was a condition. That was what? A condition of putting it in joint name. And I think that's what the trial judge looks at. I'm not sure I understand. What was the condition? There was no, there was testimony about conversations. What, Kendra, did you plan to do with the property if Harry dies? At some point, I intend, I agree, we talked about half of the value of the property going to the children. But what wasn't there, what is not in the transcript, is that I will, I, Harry, will put this in joint name to make a joint marital property based upon the agreement that you will give the property away at my death. And that's what the trial judge was, the argument made to the trial judge. And as I say in my brief, what is the logic of that? You put it in joint names. They do have discussions. And what Kendra says, yes, we talked about it, and I said at some point, I'm going to divide the property. I'll give half of the value to your children. But it is not a condition of putting it in joint names. And once it's placed in joint names, it is marital property. Is it logical? And the trial judge had to consider this. I hear that testimony. And in this divorce, I've effectively divided the property in half. Harry has his half, which he may leave to his children. Kendra has her half. And I've made two decisions. One, I've decided that since it was placed in joint names, I'm really following the line of cases that I cite, starting with Denray Smith, the Supreme Court cases, and Rogers in 1981. Once it's put in joint names, and it's the marital residence, And in this case, it occurs before they're married. It's joint marital property. 503A doesn't work. It's B. It's joint marital property. Now, 503B says, all right, if I have clear and convincing evidence that it wasn't intended to be joint marital property, I'll make, you know, I will address that accordingly. Counsel says that evidence is, we intended to do this for estate and planning purposes. And the judge, hearing that testimony, has to consider what's logical about what is proposed. Harry says, I put it in joint names so at my death, it will pass immediately to my wife. It'll be all hers. And that she will liquidate and turn it over to my children. Kendra says, we had the discussion, and I recognize that at some point, I'm going to divide this property and give half to the children. And I'm going to retain half. But what isn't in the testimony is an agreement that immediately upon his death, she vacates the home, sells the property and divides it. And there's, when you're considering the manifest way to the evidence, you're considering the logic of the testimony. And we've all been, I've had my share of divorces. There's always two sides to the same argument, it appears. But it's illogical to propose what Harry says. Harry says, I agreed to make it joint marital property. But I did that with the understanding that at my death, it's immediately going to be given to my children. And the judge didn't find that logical. And that is not clear and convincing evidence. And he gave credibility to Kendra. And to, a roundabout way to answer your question, he has accomplished what Kendra said, as I said earlier. It is now 50-50. If Harry chooses to give it to his children, and I presume he will, again, that's a presumption. 50% of the value of that property now passes to the children. 50% of the property is Kendra's. The judge made a determination that it was joint marital under 503B. He found no evidence that there was clear and convincing evidence that it wasn't intended to be that. And what makes this extraordinary, from cases I've had before, they start this process of making it joint before they get married. A month before, they put it in joint names. And this is a marriage of duration of a decade. So addressing goes right into the second argument. Under 503B, should there have been some other division? Should they have taken out what Harry contributed? Well, in determining the issue before us, in deciding what the intent was, whose intent and at what point governs this question of whether it was to be marital property or not? Well, keep in mind, starting with not only the adoption of 503, but the cases that I find, I guess, more relevant, that's Supreme Court cases going back to 81, the presumption that it's marital property is there. Can't change that. That is by matter of law. That is by matter of precedent. But evidence to overcome the presumption, which is what you're arguing. There is no... Where is the focus of the court supposed to be? There is no such evidence. Because the only evidence... Am I not answering? You're answering my question. Okay. There's the presumption that property, like here, is made a gift to the marital estate and becomes marital property. The presumption can be overcome. And regarding overcoming that presumption, where is the focus that the court should put on to evidence to overcome it? That is, is it the intent of the donator here, Harry, who had this property? And is it at what point, is it when the transfer is made? Which I think you're arguing here. Yes, that is what I'm arguing. Okay. At the point the transfer is made, what was his intent? Is that the question, what was his intent? Or what was her intent, or how does it work? No, I think the intent is presumed by the act. His intent is to make it marital property once he commits the act. Now, then the trial court may consider, if there's clear and convincing evidence, that the presumption of that intent is misconceived. The argument Harry makes is, I did this only because I wanted to make certain that at my death, all this property was conveyed by my wife to my children. And he says, that was my intent, that's my clear and convincing evidence, and even though it looks like I made it marital property, that isn't what I meant at my death. Now, the panel has asked, of course, the question, does this even have a bearing on divorce? I would suggest it does not, but let's just deal with that. Kendra says, we had this conversation, and I said, if you die, at some point I am going to give half of it to your children. Now, that is not, nowhere in the testimony are you going to say, I agreed, you put it in joint names, and I will do this. There is no clear and convincing evidence by either Harry or Kendra, that they sat down and said, make this joint marital property, and we will divide it up a different way at the time of death. And that is the key. There is no such agreement. There is a disparity in testimony as to the conversation. And the judge, the trial judge, quite frankly, concluded that that wasn't the intent, but he accomplished by the debate. Justice McCullough asked you at the beginning about the Wasecki case, you claimed it was distinguishable, but you didn't provide... You know, I really didn't address it, because I really, whether that's an error on my part, I don't mean it to be. Well, tell us now how it's distinguishable. In Wasecki, and I'm going to call greatly from memory on it, but the issue was a man who felt that, because of language barriers and problems, that he did not have a full understanding of what happened, so he said, I transferred everything to a spouse. I think, without being presumptuous, I don't agree with the decision at all, and I think all other decisions were similar facts. Well, I don't agree with it as a basis to distinguish it, counsel. You could say it's wrongly decided because we could choose not to agree with it. I just, what was decided there is that the trial judge had clear and convincing evidence. Part of the panel found it was clear and convincing evidence that this transfer was made because of various factors, including some confusion regarding language. And regarding past events. No such events transpired here. Doesn't it stand for the proposition, as Mr. Putner argued, that if a transfer is being made for purposes of establishing a disposition of property upon death, that it's not a grant to, a gift made to the marital estate? I see where the argument is made. I think the conclusion of the signification is incorrect. So we would, in order to agree with your position before this court, we'd have to disagree with Wasicki? Not necessarily. Would you say the First District was wrong in its analysis? No, not necessarily, because this case is so close and relevant to and comparable to so many of the other cases involving marital home. Starting with, and including, N. Ray Smith, the Supreme Court case from 81, which at some note it was John R. Spring from my area, and the Rogers case decided in the same year. But isn't Mr. Putner correct that in Smith there was a dispute in the testimony so that the issue was really one of what the trial court believed was here? Kendra says, oh yeah, we had this conversation, and the dispute seems to be whether it's 50% or 100%. Isn't that a rather distinguishing characteristic between these cases? I'm not sure how much Kendra's testimony, as I said, the judge's conclusion conforms with Kendra's testimony, but I don't agree because while they acknowledge that agreement, there is no testimony saying for Kendra, I agree, you put it in joint names, I will do this. In fact, there would have been no legal enforcement of that provision had Harry died. It would have passed to her. The children would have had no legal basis to compel her to sell the property and do anything. Did any of these cases that you've cited or your opponent has cited deal with property that has been placed in joint tenancy with another party and there's no marriage? I could not find one. I thought this case was distinguishable because the actual joint tenancy occurred before the marriage. All of these talk about conveyances and jointers. But everyone agrees it was done clearly in contemplation of marriage, which occurred 30 days later. They got married a month later. Yeah, they had the marriage plan. It's uncontroverted that they did. I mean, I'm not sure how big a factor that would be because it is clear they're living together, they've been living together. The testimony was they've been living together for a year. What about Mr. Kuttner's point that the alternative argument that if the trial court, if we affirm the trial court's determination that it's heritable property, that we should consider the contribution towards the acquisition of it that Harry had made and that this is clearly identified and so forth and the trial court erred by not giving him that credit? Well, again, his contrary manifesto has evaded the evidence, and I say no. But the difference in this case, counsel, is the evidence is pretty much not in dispute. We don't have any, as opposed to all the other cases, someone saying X and someone else saying Y. We have only two witnesses and the only dispute is, as Mr. Kuttner pointed out, 100% and 50%, but everything else is pretty much in agreement, isn't it? That's where I disagree. There is, and I reiterate, there is not in the testimony, there's testimony of discussions about what would happen at Harry's death. Harry says, I agreed, I put it in joint names, and she's going to give it to my children at my death. Kendra testifies that I talked in terms of what I would do at your death, but not in terms of, I agree, put this in joint names, and I will divide it in half and give 50% children and 50% to me. She acknowledged the statement. In fact, she says, I agree, I intended to do that. Well, my point is testimony isn't in conflict. The effect of it may be, but the testimony isn't. Well, I think that's a major conflict because, and I see my two witnesses, it's a major conflict because Harry is saying, I did this with the understanding at my death, she's going to sell it, get out of our marital home and give it to the children. That's not at all what she's saying. She's saying, at his death, I'm going to consider, I'm going to divide it eventually, but that's the distinguishing factor. It's not saying, I agree, Harry, you put this in joint names, and I will divide it immediately upon your death. Why shouldn't Harry get consideration towards this? Consider the multiple factors in the statute, and they're set out fairly distinctly. Early on in the 81 case from the Supreme Court, Harry is employed. I try to set these out in my own brief. Harry is employed and still employed. He's retired, and he's employed with the state as a food inspector, or meat inspector. Kindred employment opportunities are far less substantial. The division of property where it's pointed out, you know, he ended up with $6,000, and that's one of the factors, division. How did he end up? He ends up with the AT&T, the valuation of the AT&T non-marital pension that is in excess of $220,000. I have a figure. So when you say 6 plus the pension, that value was taken into account by the judge, and undoubtedly divided. The ability of both parties, Harry remains in the house, and he has to divide it at some point, but he remains in the house. Kindred has a house. The judge simply weighed those factors under 503D that the Supreme Court in the 1981 decision said you must do, and came to the conclusion that this was intended to be a marital transfer, and I'm dividing it as marital property, and there is no clear and convincing. There's no evidence to challenge or to change or to alter the decision of the trial judge that it's marital property, and taking all these into account, I'm going to divide it in half, and I'm not going to give extra credit to Harry for it. Thank you, counsel. Thank you. Rebuttal? In reference to Justice Stigman's question to counsel regarding whose intent, and I'm quoting from the Wozzecki case, in the instant case, the trial court heard conflicting testimony with regard to respondent's intentions at the time he transferred the property into joint tenancy, and found respondent's testimony to be the more credible. So it's the person, the transferor's intent is what's controlling and what the trial court needs to consider. Well, isn't it true that this was an immigrant from Poland who also discussed this with his attorneys? Yes. And his spouse admitted that it was discussed with his attorneys, and he said precisely the reason that he was doing it was because he'd had earlier problems acquiring title or reacquiring title to some earlier properties, either because of a divorce or a death. He didn't understand how things worked, so this is why I'm doing it. So you've got language barrier, immigrant, prior event that he wants to plan for, and the spouse saying, yeah, that's exactly what he told his lawyers, but I still want it to be treated as marital. His previous wife... Weighing the evidence in that case is a lot different than weighing the evidence here, is it not? The evidence is different, but the analysis shouldn't be any different. You have Harry... Well, except that you have the weight of the evidence. Well, I guess the point is, you're never going to have cases that are always factually exactly on point. What you have here is a person who transferred real estate in a joint tenancy with his wife for estate planning purposes because previously, when his previous wife died, he had problems, I think specifically with his Wisconsin property. He owns a property in Wisconsin. With getting that into his own name so he could do sales, I think he sold pieces of that property. So he didn't want to go through that again. He didn't want his wife to go through that again. Very similar to this case, so he transferred it into both names, but only with the intent that if something happened to him, his wife would get the property. I think that was the difference in that case. And the court found that the reason he did it was because it was for estate planning purposes. I think it's really... It's similar on point. Justice McCullough asked about the issue of transfers prior to the marriage. In dissolution, and this is quoted from my brief on page 10 and comes out of the Wolsinki case, in dissolution proceedings where the subject matter is property acquired prior to the marriage, the controlling presumption will be common law presumption of gift, which the donor's spouse may rebut with clear and convincing and unmistakable evidence. So basically, it's the same burden either way, even if they had not been married. Although, I must say, but for the dissolution proceeding, it's difficult when people own real estate jointly and they're not married. It becomes very difficult because really, the only way to deal with that is through a partition action if one party doesn't agree to do what the other party wants to do. And I will say, since this case has come about, when I do trust, and that business has picked up a little bit because of recent things going on, I put on deeds. I had one recently. I put on the deed that this property is being transferred for estate planning purposes. I put that on a deed. Does that make a difference? I don't know, but it sure does make me feel a little bit better based on this case. Well, Patrick, what about the argument of Mr. Berry that the whole idea of transferring this for estate planning purposes is kind of silly because, in fact, it achieves nothing. Namely, upon death, Kendra owns it all, and she can do with it as she wishes, and she's under no obligation. She's really got the estate planning purposes in mind and can do something else with regard to this property, which, after all, was his. He could have planned for it with the children by name or some other way or made them tenants so that, if that's his intent, the vehicle he chose was entirely faulty, and therefore maybe it wasn't. That seems to be Mr. Berry's argument. Isn't he right? I agree with him. I agree with that. It's not a very smart way of doing things. And, you know, Judge, I've been doing divorces for 29 years. I'm in my 29th year, and I do a lot of divorces, but I've only done about 10 to 15 prenups, and I've seen a lot of different type cases. But this is the norm when people are getting married. This is the norm. They don't think about the ramifications. They just do things, and they trust their spouse. They're going to marry this person. They trust them, so they say, How would this explain to me how Harry, who is, as you just explained, been through some difficulties in the past, why would he think that this arrangement is somehow going to be estate planning for his children? Well, remember, he had a 12-year-old. He didn't want his second wife to be in control of his assets should something happen to him, and he trusted Kendra is my only answer. I have no answer. I will say this, though. We don't know what the judge thought. I know counsel mentions that. We have no idea what the judge was thinking when he made his decisions. Thank you. Thank you. We'll take this matter under review. Bye.